IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | Case No.: 1:20-cv-00669 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| vs. | ) | **PLAINTIFF'S MOTION FOR** |
| | ) | **RECONSIDERATION OF** |
| OBERLIN COLLEGE, et al. | ) | **COURT'S EXPRESSED** |
| | ) | **INTENTION TO DISMISS** |
| | ) | **PLAINTIFF'S CLAIMS AND TO** |
| | ) | **DENY PLAINTIFF'S MOTION** |
| | ) | **FOR A TEMPORARY** |
| Defendants. | ) | **RESTRAINING ORDER** |

Now comes the Plaintiff, by and through undersigned counsel, and respectfully moves this Honorable Court to reconsider its expressed intention to dismiss Plaintiff's Complaint without prejudice and to deny his Motion for a Temporary Restraining Order, based upon the March 23, 2020 decision of the United States District Court for the Eastern District of Michigan, Southern Division, in *Doe v. University of Michigan,* 18-1776, that held in part:

1) a University of Michigan student accused of violating the University's Sexual Misconduct Policy **had standing to sue** the University under 42 U.S.C. § 1983 and Title IX **prior to the University conducting a formal hearing against him and prior to any sanctions and discipline being imposed against him;**

2) the student's causes of action against the University of Michigan **were ripe prior to the University conducting a formal hearing against him and prior to any sanctions and discipline being imposed against him** because his injury involved the deprivation of one of the most basic due process rights – the hearing itself;

3) the student's causes of actions against the University of Michigan **were not moot** because the student was entitled to clarity as to the procedural safeguards that the University would implement and follow in proceeding with its disciplinary proceeding against him; and

4) the student was entitled to judgment as a matter of law on his claims that the portions of the University of Michigan's 2018 and Interim 2019 Sexual Misconduct Policies were unconstitutional **prior to the University conducting a formal hearing against him and prior to any sanctions and discipline being imposed against him**;

Based on the very recent decision in *Doe v. University of Michigan,* supra, and for the additional reasons more fully set forth in the Brief in Support, attached hereto and incorporated herein, Plaintiff respectfully moves this Honorable Court to reconsider its expressed intention to dismiss his Complaint without prejudice and to deny his Motion for a Temporary Restraining Order.

        Respectfully Submitted

        /s/ Brian A. Murray
        LARRY W. ZUKERMAN, Esq. (0029498)
        S. MICHAEL LEAR, Esq. (0041544)
        BRIAN A. MURRAY, Esq. (0079741)
        ADAM M. BROWN, Esq. (0092209)
        Zukerman, Lear & Murray Co., L.P.A.
        3912 Prospect Ave. East
        Cleveland, Ohio 44115
        lwz@zukerman-law.com
        sml@zukerman-law.com
        bam@zukerman-law.com
        amb@zukerman-law.com
        Counsel for Plaintiff John Doe

**BRIEF IN SUPPORT**

### I. OBERLIN COLLEGE'S SEXUAL MISCONDUCT POLICY CONTAINS PROCEDURES THAT HAVE BEEN REPEATEDLY HELD TO BE UNCONSTITUTIONAL BY THE 6TH CIRCUIT COURT OF APPEALS

Plaintiff respectfully asserts that Oberlin College's Sexual Misconduct Policy contains provisions and procedures that would allow the College to make an adjudication that he violated said policy by engaging in non-consensual sexual conduct with another student without providing him with the constitutionally mandated live hearing requirement and without providing him with the constitutionally mandated opportunity to confront his accuser and any other adverse witnesses against him in the presence of a neutral fact finder.

The Oberlin Policy specifically provides that "the College may substitute an alternate method of adjudication at its discretion" if a full Hearing Panel "cannot reasonably be convened", due to situations such as the adjudication being scheduled during a break, at the end of a semester, and after the end of the academic year.[1]  The Oberlin Policy does not define and/or describe what procedures that it would implement if it decides to proceed with an "alternate method of adjudication."

The Oberlin Policy also does not require the participation of the reporting party (Plaintiff's accuser) or any of the witnesses interviewed by the College's Title IX investigator at the adjudicatory hearing.[2]  The Policy notes that "the College's ability to present evidence at the full hearing may be limited in the instance that a Reporting Party

---

[1] Relevant portion of Oberlin College's October 16, 2019 Sexual Misconduct Policy, attached hereto as Exhibit A, at p.51.
[2] Relevant portion of Oberlin College's October 16, 2019 Sexual Misconduct Policy, at p.57.

chooses not to participate in the hearing."[3] The Policy also notes that in the event that a Reporting Party chooses to not participate in the hearing, "Oberlin College will assume the function of the Reporting Party" and in such instances "the Title IX Coordinator will appoint an administrator as the institutional representative to serve as the Reporting Party."[4] The Policy does not describe how the College and/or appointed administrator and/or institutional representative functions as the Reporting Party during the adjudicatory hearing, such as whether said individuals are permitted to read a statement prepared by the Reporting Party and/or whether the Title IX investigator and/or anyone else is permitted to present any alleged evidence or statements provided by the Reporting Party in the Reporting Party's absence.

## II. *DOE v. MICHIGAN AND ITS REPEATED HOLDINGS THAT A COURT CANNOT SIMPLY STANDBY AND WAIT FOR A COLLEGE TO COMPLETE ITS TITLE IX INVESTIGATION AND TO RENDER ITS FINDINGS BEFORE INTERVENING TO ENSURE THAT AN ACCUSED STUDENT'S DUE PROECSS RIGHTS ARE PROTECTED*

The plaintiff in *Doe v. Michigan,* case No. 18-1776 (E.D. Michigan), is a male student who was accused of sexual assault by a female student.[5] On March 12, 2018 the female student alleged that the plaintiff had a sexual encounter with her that was not consensual in a complaint she filed with the University's Office of Institutional Equity.[6] The plaintiff maintained that said encounter was consensual.[7] There were no other witnesses to the encounter.[8]

---

[3] Relevant portion of Oberlin College's October 16, 2019 Sexual Misconduct Policy, attached hereto as Exhibit A, at p.57.
[4] Relevant portion of Oberlin College's October 16, 2019 Sexual Misconduct Policy, at p.49.
[5] *Doe v. University of Michigan*, 18-1776 (E.D. Michigan, March 23, 2020), attached hereto as Exhibit B.
[6] *Doe v. University of Michigan*, 18-1776 (E.D. Michigan, March 23, 2020).
[7] *Doe v. University of Michigan*, 18-1776 (E.D. Michigan, March 23, 2020).
[8] *Doe v. University of Michigan*, 18-1776 (E.D. Michigan, March 23, 2020).

4

**A. DOE WAS ENTITLED TO INJUNCTIVE RELIEF AS IT RELATED TO THE UNIVERSITY OF MICHIGAN'S 2018 SEXUAL MISCONDUCT POLICY PRIOR TO THE UNIVERSITY COMPLETING ITS INVESTIGATION IN THE ALLEGATIONS AGAINST HIM**

The University of Michigan's 2018 sexual misconduct policy did not provide the plaintiff with the right to a live hearing to defend against the allegations that he violated said policy by engaging in non-consensual sex with said female student.[9] Instead, an investigator would conduct an investigation and issue a report in which he/she would make a determination by a preponderance of the evidence as to whether the plaintiff violated the policy.[10]

While the University of Michigan's investigation was proceeding against him, the plaintiff filed his lawsuit on June 4, 2018 against the University and other University officials challenging the constitutionality of the policy and seeking a restraining order and injunctive relief to prevent the University's investigator from rendering her finding as to whether he violated the University's policy.

On June 28, 2018, Senior United States District Court Judge Arthur J. Tarnow held a hearing on the plaintiff's motion for a restraining order and preliminary injunction against the University of Michigan.[11] The University argued that the plaintiff's causes of actions failed because they were not ripe for decision.[12] In support of its argument, the University asserted that in the absence of a finding that the plaintiff violated its policy

---

[9] *Doe v. University of Michigan*, 18-1776 (E.D. Michigan, March 23, 2020), attached hereto as Exhibit B.
[10] *Doe v. University of Michigan*, 18-1776 (E.D. Michigan, March 23, 2020).
[11] *Doe v. University of Michigan*, 325 F.Supp.3d 821, 826 (E.D. Michigan 2018).
[12] *Doe v. University of Michigan*, 325 F.Supp.3d 821, 826 (E.D. Michigan 2018).

5

and/or until University imposed a sanction on him, the plaintiff had no due process claim to adjudicate.[13]

Judge Tarnow rejected the University's argument and held that plaintiff had satisfied all three (3) factors of the ripeness inquiry: 1) the likelihood that the harm alleged by the plaintiff will ever come to pass; 2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and 3) the hardship to the parties if judicial release is denied at this stage in the proceedings.[14] Judge Tarnow reasoned that the plaintiff, without sufficient due process protections, was at immediate risk of expulsion and had already suffered injury as sexual assault allegations "may impugn his reputation and integrity, thus implicating a protected liberty interest."[15]

Judge Tarnow further held that additional facts were unnecessary to fairly adjudicate the merits of the plaintiff's case because he had examined the University's policy and the relevant case law and was well-equipped to determine whether the policy adequately protected the plaintiff's due process rights.[16] Judge Tarnow then found that if he denied the plaintiff's motion for injunctive relief, but ultimately finds that the policy violates due process, the plaintiff would have been forced to defend himself against serious sexual assault allegations without adequate constitutional safeguards.[17]

---

[13] *Doe v. University of Michigan*, 325 F.Supp.3d 821, 826 (E.D. Michigan 2018).
[14] *Doe v. University of Michigan*, 325 F.Supp.3d 821, 826 (E.D. Michigan 2018) (citing *Berry v. Schmitt*, 688 F.3d 290, 298.
[15] *Doe v. University of Michigan*, 325 F.Supp.3d 821, 826 (E.D. Michigan 2018) (citing *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017).
[16] *Doe v. University of Michigan*, 325 F.Supp.3d 821, 826 (E.D. Michigan 2018).
[17] *Doe v. University of Michigan*, 325 F.Supp.3d 821, 826 (E.D. Michigan 2018).

Judge Tarnow then reasoned "Defendants essentially ask this Court to sit back and wait for the investigator to issue findings against Plaintiff before intervening in this action. But at this very moment, the University may be denying Plaintiff due process protections to which he is entitled. ***The Court cannot, and will not, simply standby as the fruit continues to rot on the tree. This case is ripe for adjudication***."[18]

Judge Tarnow subsequently found that the plaintiff was entitled to a preliminary injunction against the University of Michigan because he was entitled a to a hearing and to cross-examination.[19] In support of his decision, Judge Tarnow cited the Sixth Circuit Court of Appeals' decision in *Doe v. University of Cincinnati*, 872 F.3d 393 (6th Cir. 2017) in which the Sixth Circuit held that a male student accused of engaging in non-consensual sex with a female student was entitled to a preliminary injunction prohibiting the University from finding him responsible for sexual assault without having had the opportunity to cross-examine his accuser.[20]

The record on appeal in *Doe v. University of Cincinnati,* supra, reflected that the female student, Jane Roe, did not appear at the respondent John Doe's sexual misconduct hearing, and that the panel Chair read Jane Roe's statement to the panel.[21] Accordingly, neither the respondent nor the panel were able to ask Jane Roe any questions.[22]

---

[18] *Doe v. University of Michigan*, 325 F.Supp.3d 821, 826 (E.D. Michigan 2018) (emphasis added).
[19] *Doe v. University of Michigan*, 325 F.Supp.3d 821, 827 (E.D. Michigan 2018)
[20] *Doe v. University of Michigan*, 325 F.Supp.3d 821, 827 (E.D. Michigan 2018)(citing *Doe v. University of Cincinnati,* 872 F.3d 393, 402 (6th Cir. 2017).
[21] *Doe v. University of Michigan*, 325 F.Supp.3d 821, 827 (E.D. Michigan 2018)(citing *Doe v. University of Cincinnati,* 872 F.3d 393, 397 (6th Cir. 2017).
[22] *Doe v. University of Michigan*, 325 F.Supp.3d 821, 827 (E.D. Michigan 2018)(citing *Doe v. University of Cincinnati,* 872 F.3d 393, 397 (6th Cir. 2017).

Nevertheless, the panel still found John Doe responsible for violating the University of Cincinnati's sexual misconduct policy.[23]

In granting the Plaintiff's motion for a preliminary injunction during the University of Michigan's sexual misconduct investigation, Judge Tarnow stated that "[u]nlike the [sexual misconduct] policies which the Sixth Circuit has upheld, [the University of Michigan's] policy deprives Plaintiff of a live hearing and the opportunity to face his accuser."[24] Judge Tarnow further stated "[w]ithout a live proceeding, the risk of an erroneous deprivation of Plaintiff's interest in his reputation, education, and employment is significant" and noted that "[a]dditional procedural safeguards would both assist the truth-seeking process and help ensure the protection of Plaintiff's constitutional rights."[25]

Judge Tarnow further found: 1) requiring the University of Michigan to hold hearings for students accused of sexual assault would not be fiscally or administratively burdensome; 2) the plaintiff was likely to succeed on the merits of his claim that the University of Michigan's Policy, which afforded neither a live hearing nor cross-examination, violated his right to due process; 3) the Court was permitted to presume the Plaintiff would suffer irreparable harm if injunctive relief was not granted because his constitutional right to due process was "threatened or impaired" and money damages could not compensate Plaintiff for the reputational harm he had already suffered and will continue to suffer as a consequence of sexual assault allegations; 4) the potential harm an injunction may pose to the University' strong interest in maintaining campus safety and

---

[23] *Doe v. University of Michigan*, 325 F.Supp.3d 821, 827 (E.D. Michigan 2018)(citing *Doe v. University of Cincinnati,* 872 F.3d 393, 397 (6th Cir. 2017).
[24] *Doe v. University of Michigan*, 325 F.Supp.3d 821, 828 (E.D. Michigan 2018).
[25] *Doe v. University of Michigan*, 325 F.Supp.3d 821, 828 (E.D. Michigan 2018).

8

disciplining students who have committed sexual misconduct and the emotional harm and trauma that the complainant may suffer by having to appear at a live hearing with questioning did not outweigh the basic protection for the due process rights of an accused student; and 5) the public interest factor was neutral as the public had both an interest protecting a person's constitutional rights to due process and in ensuring the safety and well-being of students on university campuses.[26]

On April 10, 2019, the Sixth Circuit Court of Appeals vacated Judge Tarnow's order granting injunctive relief to the accused University of Michigan Student and remanded the matter back to him for reconsideration in light of: 1) its September 25, 2018 decision in *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018), involving another University of Michigan student accused of violating the University's sexual misconduct policy, in which it held that if a university has to choose between competing narratives to resolve a case, the university must give the accused student or his agent an opportunity to cross-examine the accuser and adverse witnesses in the presence of a neutral fact finder; and 2) the University of Michigan's Interim 2019 Sexual Misconduct Policy that the University claimed it would use to adjudicate the sexual misconduct allegations against the plaintiff.

### B. DOE WAS ALSO FOUND TO BE ENTITLED TO INJUNCTIVE RELIEF AS IT RELATED TO THE UNIVERSITY OF MICHIGAN'S 2019 SEXUAL MISCONDUCT POLICY PRIOR TO THE UNIVERSITY PROCEEDING TO A HEARING AGAINST HIM

On January 19, 2019, the University of Michigan issued an Interim Sexual Misconduct Policy that it claimed it would use against the plaintiff.[27] Said Policy provided both students with the opportunity to appear before a hearing officer and to

---

[26] *Doe v. University of Michigan*, 325 F.Supp.3d 821, 828-29 (E.D. Michigan 2018).
[27] *Doe v. University of Michigan*, 18-1776 (E.D. Michigan, March 23, 2020), attached hereto as Exhibit B.

9

question the opposing party and witnesses after the University completed its investigation into the reporting party's allegations and provided the parties with an opportunity to review the final investigation report.[28] The Policy also provided that attendance at the hearing was voluntary, and if either party or a material witness chose not to attend, the Title IX Coordinator would decide whether the University would proceed with the hearing.[29] Following the hearing, the hearing officer would decide by a preponderance of the evidence whether a respondent violated the University of Michigan's 2019 Sexual Misconduct Policy.[30]

The University of Michigan moved Judge Tarnow to dismiss the plaintiff's causes of action pursuant to Fed.R.Civ.P. 12(b)(1) for mootness, lack of standing, and lack of ripeness.[31] The University of Michigan again argued that the plaintiff lacked standing and that his claims were not ripe because he had yet to suffer any injury since no guilty findings or sanctions had been imposed upon him.[32] Judge Tarnow rejected the University's argument again, holding that "Plaintiff's injury lies in the deprivation of one of the most basic due process rights-the hearing itself."[33]

The University of Michigan also argued that the plaintiff's due process claims were muted by its 2019 Sexual Misconduct Policy which would provide the plaintiff with a hearing.[34] Judge Tarnow rejected the University's argument, reasoning that the "Defendants' voluntary cessation through the Interim Policy does not assure Plaintiff that

---

[28] *Doe v. University of Michigan*, 18-1776 (E.D. Michigan, March 23, 2020), attached hereto as Exhibit B.
[29] *Doe v. University of Michigan*, 18-1776 (E.D. Michigan, March 23, 2020).
[30] *Doe v. University of Michigan*, 18-1776 (E.D. Michigan, March 23, 2020).
[31] *Doe v. University of Michigan*, 18-1776 (E.D. Michigan, March 23, 2020).
[32] *Doe v. University of Michigan*, 18-1776 (E.D. Michigan, March 23, 2020).
[33] *Doe v. University of Michigan*, 18-1776 (E.D. Michigan, March 23, 2020).
[34] *Doe v. University of Michigan*, 18-1776 (E.D. Michigan, March 23, 2020).

Defendants' will not return to [their] old ways" and that Plaintiff's case could only be mooted "if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."[35] Judge Tarnow also noted that "[t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness" and that as the University of Michigan failed to meet that burden, the Plaintiff's due process claims were not moot.[36]

Judge Tarnow subsequently held that the Plaintiff was entitled to injunctive relief in that while the University of Michigan could proceed with a disciplinary proceeding against him, the University was ordered to provide him with a live hearing and with the opportunity to cross-examine witnesses and the claimant since the outcome of his disciplinary action rested on competing narratives.[37]

Note, the University of Michigan's adjudication hearing on the complainant's allegations that respondent in *Doe v. Michigan*, engaged in non-consensual sex with her will occur more than two (2) years after she made her allegations to the University and the University began conducting its investigation and while a prior respondent's appeal of the University of Michigan's sexual misconduct policy and the sanctions imposed against him was on appeal to the Sixth Circuit Court of Appeals. At no point in time in any of the litigation in *Doe v. Michigan* was there ever a concern expressed that the University of Michigan would somehow be in violation of Title IX and lose its federal funding if its Title IX sexual misconduct adjudicatory process was delayed due to a respondent being entitled to injunctive relief and/or litigating said issues prior to an adjudication as to

---

[35] *Doe v. University of Michigan*, 18-1776 (E.D. Michigan, March 23, 2020), attached hereto as Exhibit B.
[36] *Doe v. University of Michigan*, 18-1776 (E.D. Michigan, March 23, 2020).
[37] *Doe v. University of Michigan*, 18-1776 (E.D. Michigan, March 23, 2020).

11

whether he had violated their policy. Thus, Defense Counsel's representations to this Honorable Court, without citing to any legal authority or precedent that supports their position that Oberlin College will somehow lose its federal funding or be in violation of Title IX if this Honorable Court grants Plaintiff's motion for injunctive relief and/or requires Oberlin College to wait until the Sixth Circuit issues its forthcoming opinion in *John Doe v. Oberlin College,* Case No. case number 19-3342, before proceeding to an adjudicatory hearing against the Plaintiff is not well-founded and should not be given any weight.

### III. THE OBERLIN COLLEGE SEXUAL MISCONDUCT POLICY, LIKE THE UNCONSTITUTIONAL UNIVERSITY OF MICHIGAN POLICIES, FAILS TO GUARANTEE THE PLAINTIFF THE RIGHT TO A LIVE HEARING AND THE RIGHT TO CROSS-EXAMINE HIS ACCUSER AND OTHER WITNESSES

Just as the district court in *Doe v. University of Michigan*, ultimately held that the University of Michigan's sexual misconduct policies were unconstitutional and that University of Michigan could only proceed with its disciplinary proceedings against the plaintiff if it provided the plaintiff with a live hearing and the opportunity to cross-examine his accuser and other witnesses,[38] so too should this Honorable Court in respect to the Oberlin Sexual Misconduct Policy and the disciplinary proceedings that Oberlin College has initiated against Plaintiff.

#### A. THE OBERLIN POLICY VIOLATES PLAINTIFF'S CONSTITUTIONAL RIGHTS TO DUE PROCESS BY FAILING TO GUARANTEE THAT HE WILL RECEIVE A LIVE HEARING

The Oberlin Policy specifically provides that "the College may substitute an alternate method of adjudication at its discretion" if a full Hearing Panel "cannot

---

[38] *Doe v. University of Michigan*, 18-1776 (E.D. Michigan, March 23, 2020), attached hereto as Exhibit B.

12

reasonably be convened."[39] The Oberlin Policy provides examples of when a full Hearing Panel might not be able to be convened, such as "at or after the end of a semester or academic year or during the Winter Term."[40]

As the Oberlin College's Spring semester and its 2019-2020 academic year is scheduled to end on Sunday, May 17, 2020[41] and due to the current and likely continued social distancing measures implemented by Oberlin College and the State of Ohio, there is a significant likelihood that the College will implement the clause in its Policy that allows for an "alternate method of adjudication." The Oberlin Policy fails to define and/or provide any guidance as to what an "alternative method of adjudication" entails. However, it's very name suggests that said procedure and/or process would not involve a live hearing.

Accordingly, this Honorable Court, like the district court in *Doe v. Michigan*, supra, should issue an Order requiring the Oberlin College Defendants to provide the Plaintiff with a live hearing to defend against the allegations that he violated the Oberlin Policy and with clarity as to the procedural safeguards that the College would implement and follow if it decides to proceed with its "alternative method of adjudication."

### B. THE OBERLIN POLICY VIOLATES PLAINTIFF'S CONSTITUTIONAL RIGHTS TO DUE PROCESS BY FAILING TO GUARANTEE THAT HE WILL HAVE AN OPPORTUNITY TO CROSS-EXAMINE HIS ACCUSER AND OTHER WITNESSES AT A LIVE HEARING

The Oberlin Policy does not require the participation of the reporting party

---

[39] Relevant portion of Oberlin College's October 16, 2019 Sexual Misconduct Policy, attached hereto as Exhibit A, at p.51.
[40] Relevant portion of Oberlin College's October 16, 2019 Sexual Misconduct Policy, at p.51.
[41] Oberlin College calendar for 2019-2020 academic year, attached hereto as Exhibit C.

13

(Plaintiff's accuser) or any of the witnesses interviewed by the College's Title IX investigator at the live hearing.[42] The Policy notes that "the College's ability to present evidence at the full hearing may be limited in the instance that a Reporting Party chooses not to participate in the hearing."[43] The Policy also notes that in the event that a Reporting Party chooses to not participate in the hearing, "Oberlin College will assume the function of the Reporting Party" and in such instances "the Title IX Coordinator will appoint an administrator as the institutional representative to serve as the Reporting Party."[44]

The Oberlin Policy clearly reflects that the College would intend to proceed with a formal hearing against a Respondent Party, such as the Plaintiff, even if his accuser chose to not participate at the hearing.

Accordingly, this Honorable Court, like the district court in *Doe v. Michigan*, supra, should issue an Order requiring the Oberlin College Defendants to provide the Plaintiff with an opportunity to cross-examine his accuser and any other witnesses against him at a live hearing.

### IV. PLAINTIFF SHOULD HAVE AN OPPORTUNITY TO FILE AN AMENDED COMPLAINT FOR THE PURPOSE OF ESTABLISHING THAT THIS HONORABLE COURT HAS DIVERSITY JURISDICTION OVER HIS STATE LAW CLAIMS

Plaintiff respectfully asserts that this Honorable Court should grant him leave to file an Amended Complaint in this matter to assert that this Honorable Court has jurisdiction over his state law claims pursuant to 28 U.S.C. §1332, as the matter in controversy on his

---

[42] Relevant portion of Oberlin College's October 16, 2019 Sexual Misconduct Policy, attached hereto as Exhibit A, at p.57.
[43] Relevant portion of Oberlin College's October 16, 2019 Sexual Misconduct Policy, at p.57.
[44] Relevant portion of Oberlin College's October 16, 2019 Sexual Misconduct Policy, at p.49.

state law claims exceeds $75,000.00, exclusive of interests and costs, and is between citizens of different States. Plaintiff is a citizen of the State of Georgia and the Defendants are citizens of the State of Ohio. Plaintiff did not aver in his Complaint that he was a citizen of Georgia because he filed his Complaint in the Lorain County Court of Common Pleas and there was no issue as to whether the Lorain County Court of Common Pleas had jurisdiction over his state law claims as the Defendants conduct occurred in Lorain County.

Plaintiff further asserts that his state law causes of action for breach of contract and promissory estoppel accrued on or about February 26, 2020 and are therefore ripe for this Honorable Court's consideration, regardless of whether this Honorable Court denies the Plaintiff's request for a restraining order and/or injunctive relief and/or dismisses his 42 U.S.C § 1983 claims and Title IX claims. If this Honorable Court does not grant Plaintiff permission to file an Amended Complaint in this matter, he would respectfully request that this Honorable Court remand his state law claims back to the Lorain County Court of Common Pleas.

WHEREFORE, the Plaintiff, by and through undersigned counsel, respectfully moves this Honorable Court to reconsider its expressed intention to dismiss Plaintiff's Complaint without prejudice and to deny his Motion for a Temporary Restraining Order based upon the March 23, 2020 decision of the United States District Court for the Eastern District of Michigan, Southern Division, in *Doe v. University of Michigan,* 18-1776.

                                          Respectfully Submitted

                                          /s/ Brian A. Murray
                                          LARRY W. ZUKERMAN, Esq. (0029498)

        S. MICHAEL LEAR, Esq. (0041544)
        BRIAN A. MURRAY, Esq. (0079741)
        ADAM M. BROWN, Esq. (0092209)
        Zukerman, Lear & Murray Co., L.P.A.
        3912 Prospect Ave. East
        Cleveland, Ohio 44115
        lwz@zukerman-law.com
        sml@zukerman-law.com
        bam@zukerman-law.com
        amb@zukerman-law.com
        Counsel for Plaintiff John Doe

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was electronically served to counsel for the Defendants on this 1st day of April 2020 via the Court's electronic filing system.

        /s/ Brian A. Murray
        BRIAN A. MURRAY, Esq.