```
 1                    UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF OHIO
 2                    EASTERN DIVISION AT CLEVELAND

 3

 4    JOHN DOE,                         Case No. 1:20-cv-669

 5           Plaintiff,

 6        vs.

 7    OBERLIN COLLEGE, et al.,

 8           Defendants.                THURSDAY, APRIL 2, 2020

 9

10

11

12                  TRANSCRIPT OF A TELECONFERENCE

13         HELD BEFORE THE HONORABLE DAN AARON POLSTER

14                   UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20  Official Court Reporter:      Lance A. Boardman, RDR, CRR
                                  United States District Court
21                                801 West Superior Avenue
                                  Court Reporters 7-189
22                                Cleveland, Ohio 44113
                                  216.357.7019
23

24
    Proceedings recorded by mechanical stenography; transcript
25  produced by computer-aided transcription.
```

```
 1   APPEARANCES:

 2

 3   On behalf of Plaintiff:

 4   ZUKERMAN, LEAR & MURRAY CO., L.P.A.
     BY:   LARRY W. ZUKERMAN, ESQ.
 5         S. MICHAEL LEAR, ESQ.
           BRIAN A. MURRAY, ESQ.
 6         ADAM M. BROWN, ESQ.
     3912 Prospect Avenue
 7   Cleveland, OH 44115
     216.696.0900
 8   lwz@zukerman-law.com
     sml@zukerman-law.com
 9   bam@zukerman-law.com
     amb@zukerman-law.com
10

11
     On behalf of Defendants:
12
     TAFT STETTINIUS & HOLLISTER LLP
13   BY:   CARY M. SNYDER, ESQ.
           DAVID H. WALLACE, ESQ.
14   3500 BP Tower
     200 Public Square
15   Cleveland, Ohio 44114
     216.241.2838
16   csnyder@taftlaw.com
     dwallace@taftlaw.com
17

18   ALSO PRESENT:    John Doe, Plaintiff

19                   Donica Varner, Oberlin General Counsel

20                   Rebecca Mosely, Oberlin Title IX Coordinator

21

22

23

24

25
```

```
09:18:44   1                    (9:18 a.m., via teleconference)
09:18:46   2                    THE COURT:  All right.  Thank you, everyone.
09:18:48   3    This is a telephone conference in Doe vs. Oberlin College,
09:18:53   4    et al.  It's Case Number 1:20-cv-669.
09:18:58   5         There was a motion that was file --
           6                    [Reporter interjection.]
09:20:01   7                    [Off-the-record discussion.]
09:20:01   8                    THE COURT:  Well, now I can't see the case
09:20:04   9    numbers, so you'll have to get that.
09:20:09  10         Plaintiffs filed a motion for reconsideration after
09:20:14  11    the Court had already denied the motion for TRO, and I was
09:20:21  12    going to follow it up with an opinion.  So I thought I ought
09:20:22  13    to talk to maybe -- the plaintiff is concerned that the
09:20:33  14    language is pretty vague as to the format of the hearing,
09:20:36  15    particularly under the circumstances now where not only is
09:20:41  16    the campus closed, but it's very difficult to get people
09:20:46  17    together and will be for some time.
09:20:48  18         I think I'd like to find out from defendant how you
09:20:55  19    plan to conduct the investigation and what type of hearing
09:20:58  20    do you contemplate.
09:21:01  21                    MR. WALLACE:  Okay.  Your Honor, this is Dave
09:21:04  22    Wallace for Oberlin.  Can you hear me okay?
09:21:07  23                    THE COURT:  Yes.
09:21:08  24                    MR. WALLACE:  The first thing I would say is I
09:21:11  25    have no idea whether there would ever be a hearing because
```

09:21:13  1   we are simply in the investigatory stage, simply trying to
09:21:18  2   conduct an investigation after which the Title IX team will
09:21:23  3   make an assessment and determine whether there is -- whether
09:21:26  4   it should proceed to a hearing or not.  So that's the first
09:21:30  5   point.
09:21:30  6        Second of all, the concern they've expressed about
09:21:35  7   this alternative adjudication, we have -- although we
09:21:39  8   certainly have that right under the policy, in this era of
09:21:43  9   modern technology, we don't see a problem with having a
09:21:46 10   hearing if one is necessary.  It might not be in person, it
09:21:55 11   might have to be, you know, a Zoom or something like that.
09:21:58 12   But we have no intention of having one person decide this if
09:22:01 13   it is ever decided to go to hearing.
09:22:03 14        The other point that I'd like to raise at this time,
09:22:06 15   Judge, is their whole motion is predicated on the idea that
09:22:10 16   there is -- that there is some lack of due process here.
09:22:16 17   And I think it's important that we get it straight out of
09:22:20 18   the chute that Oberlin as a private college is not a state
09:22:24 19   actor, and it is not subject to due process requirements.
09:22:27 20        Now, we want to be fair, of course, and our policy
09:22:30 21   meets all the OCR guidelines to be fair, but there is no
09:22:34 22   claim for due process that can be made against Oberlin.  The
09:22:38 23   Sixth Circuit has recognized that and the Northern District
09:22:41 24   has recognized that and courts all over the country have
09:22:43 25   recognized that you cannot bring a due process claim against

```
09:22:47   1   a private college or university.  So their reliance on this
09:22:54   2   case out of Michigan which pertains to a public university
09:22:57   3   is wholly out of, frankly, left field.
09:23:03   4                THE COURT:  All right.  Well, that's a good
09:23:05   5   point.  The defendant raised that last time, that Oberlin is
09:23:11   6   a private college so they are not a state actor.
09:23:16   7         Do plaintiffs have any response to that?
09:23:23   8                MR. MURRAY:  Your Honor, this is Brian Murray
09:23:24   9   on behalf of the plaintiff.
09:23:26  10         I believe that -- and we can, you know, brief this
09:23:30  11   issue if the Court permits us.  They receive federal funding
09:23:36  12   and they receive state funding, so I would believe that
09:23:41  13   there's an argument to be made that even though they're a
09:23:44  14   private college, that they would be considered a state actor
09:23:48  15   because of the funding that they receive.
09:23:51  16                MR. WALLACE:  Well -- I'm sorry, are you done?
09:23:52  17         I would just respond by saying Judge Nugent has
09:23:56  18   already rejected that very argument.  I can provide you with
09:23:58  19   a citation if you're interested.  It's --
09:24:01  20                THE COURT:  Yeah, that -- I think that's
09:24:03  21   not --
09:24:48  22                [Reporter interjection.]
09:24:48  23                (Off-the-record discussion.)
09:25:57  24                THE COURT:  I don't think that the state
09:26:01  25   funding or federal funding is going to carry the day, so I
```

```
09:26:07   1    think that's an important argument.
09:26:09   2         But the process still has to be fair, so -- so what
09:26:17   3    Oberlin is representing is that if a -- number one, they
09:26:23   4    haven't decided if they need a hearing, all right?  It may
09:26:26   5    not get past the investigation stage, all right?  And if
09:26:29   6    there is going to be a hearing and the COVID-19 epidemic is
09:26:38   7    still requiring sheltering, distancing, et cetera, they'll
09:26:44   8    conduct the hearing remotely using technology.
09:26:46   9         Is that correct, David?
09:26:52  10              MR. WALLACE:  I think that's a fair statement,
09:26:54  11    Your Honor.
09:26:54  12              THE COURT:  All right.  We're doing things --
09:26:56  13    using Zoom videoconferencing in Federal Court even for
09:26:59  14    criminal matters when necessary.  So while it's better to
09:27:04  15    have people in person, if you can't, you can certainly do it
09:27:06  16    that way.  So I think that satisfies any concerns.
09:27:11  17         Now, what -- what can -- if the complainant -- you
09:27:26  18    can't compel either the complainant or the plaintiff here to
09:27:29  19    appear and testify.  You can request them to, but they can
09:27:33  20    choose not to.  So if there is a hearing, will the hearing
09:27:43  21    officer request that both the complainant and the plaintiff,
09:27:50  22    Mr. Doe, appear?
09:27:53  23              MR. WALLACE:  I don't know the answer to that.
09:27:56  24    Perhaps our Title IX coordinator who is on the line could
09:27:59  25    better answer that than me, Your Honor.
```

|          |    |                                                                 |
|----------|----|-----------------------------------------------------------------|
| 09:28:01 | 1  | THE COURT: That's Ms. Mosely?                                   |
| 09:28:03 | 2  | MR. WALLACE: That's correct.                                    |
| 09:28:04 | 3  | THE COURT: Ms. Mosely, if -- again, there may                   |
| 09:28:09 | 4  | not be a hearing. If the university decides to drop it,         |
| 09:28:12 | 5  | they drop it. But if there is a hearing, whether you do it      |
| 09:28:14 | 6  | in person or using technology, do you plan to request both      |
| 09:28:19 | 7  | the complainant and the plaintiff here, Mr. Doe, to appear?     |
| 09:28:24 | 8  | MS. MOSELY: Yeah, this is Rebecca Mosely.                       |
| 09:28:26 | 9  | And absolutely, we would request that both would appear.        |
| 09:28:31 | 10 | THE COURT: Okay. And obviously you don't                        |
| 09:28:35 | 11 | have subpoena power like I do. You can't force them to          |
| 09:28:39 | 12 | appear. If they don't appear, you're free to draw whatever      |
| 09:28:44 | 13 | adverse conclusions you wish. Or if they appear and don't       |
| 09:28:49 | 14 | answer questions, it's not a criminal case so you're free to    |
| 09:28:52 | 15 | draw any adverse inference you want. Is that correct?           |
| 09:28:58 | 16 | MS. MOSELY: That is correct.                                    |
| 09:29:00 | 17 | THE COURT: Okay. All right. Well, it seems                      |
| 09:29:02 | 18 | to me the plaintiffs -- even if Oberlin were a state actor,     |
| 09:29:07 | 19 | that sounds like a fair proceeding to me.                       |
| 09:29:10 | 20 | Do you have a problem with that, with what Ms. Mosely           |
| 09:29:14 | 21 | has outlined?                                                   |
| 09:29:17 | 22 | MR. MURRAY: Your Honor, it's Brian Murray                       |
| 09:29:19 | 23 | again for the plaintiff.                                        |
| 09:29:20 | 24 | I would have a problem with that because the question           |
| 09:29:23 | 25 | becomes how does the hearing happen if the reporting party      |

| | | |
|---|---|---|
| 09:29:28 | 1 | is not there.  What evidence gets submitted?  Is her |
| 09:29:37 | 2 | statement read into the record?  Because our client, |
| 09:29:41 | 3 | according to Sixth Circuit case law, in order for it to be a |
| 09:29:43 | 4 | fair proceeding, has to have the opportunity to |
| 09:29:46 | 5 | cross-examine -- |
| 09:29:47 | 6 | THE COURT:  Well, that's if there's -- due |
| 09:29:50 | 7 | process applies, and I don't think it does because Oberlin |
| 09:29:53 | 8 | is a private actor.  But, you know, you can attack it.  It's |
| 09:29:58 | 9 | not worth much if the person doesn't appear, all right?  The |
| 09:30:01 | 10 | same way if your client has given a written statement and |
| 09:30:04 | 11 | then chooses not to come to the hearing, all right? |
| 09:30:08 | 12 | Ms. Mosely can consider his written statement, but it's not |
| 09:30:11 | 13 | worth nearly as much as if he were -- appeared at a hearing |
| 09:30:16 | 14 | and was subject to cross-examination. |
| 09:30:22 | 15 | MR. MURRAY:  Your Honor, this is Brian Murray |
| 09:30:24 | 16 | again. |
| 09:30:25 | 17 | On that point, I think we as lawyers would all agree |
| 09:30:27 | 18 | with that, but when we look at these cases that have, you |
| 09:30:31 | 19 | know, gone off to the Sixth Circuit like the Doe vs. |
| 09:30:35 | 20 | Cincinnati case I cited in the brief, in that case the |
| 09:30:39 | 21 | reporting party did not appear.  The responding party did |
| 09:30:44 | 22 | and asserted it was consensual sex that they had engaged in. |
| 09:30:49 | 23 | And nevertheless, despite her -- the reporting party's |
| 09:30:52 | 24 | failure to appear, the panel still found that he violated |
| 09:30:56 | 25 | the policy. |

| | | |
|---|---|---|
| 09:30:57 | 1 | And that type of situation has been happening all |
| 09:31:05 | 2 | across the country, and that's what's led to a lot of the |
| 09:31:08 | 3 | litigation involving these types of cases in the federal |
| 09:31:10 | 4 | courts, is that these reporting parties haven't been |
| 09:31:14 | 5 | required to appear, haven't had to have been questioned. |
| 09:31:19 | 6 | And it's been a process like what Oberlin's griped about |
| 09:31:25 | 7 | where there's a 100 percent conviction rate when they go to |
| 09:31:30 | 8 | a full hearing. |
| 09:31:30 | 9 | MR. WALLACE: Well, this is Dave Wallace. And |
| 09:31:32 | 10 | I would just say on yet another due process case cited by |
| 09:31:35 | 11 | plaintiff, we have to get away from the jurisprudence that |
| 09:31:40 | 12 | relates to due process because it does not apply here. |
| 09:31:45 | 13 | Our policy meets OCR guidelines. And so here we are, |
| 09:31:53 | 14 | we've got the first claim is for violations of due process. |
| 09:31:58 | 15 | Not applicable. Their next claim is for violations of Title |
| 09:32:02 | 16 | IX. Can't be an erroneous outcome yet because there hasn't |
| 09:32:07 | 17 | been an outcome. |
| 09:32:07 | 18 | So really this whole litigation has been an effort to |
| 09:32:10 | 19 | shut down our investigation and put the cart before the |
| 09:32:14 | 20 | horse. This process needs to play out, and it needs to play |
| 09:32:17 | 21 | out in accordance with our policy. And it may well be when |
| 09:32:23 | 22 | it's over, you know, there's a determination that there's no |
| 09:32:27 | 23 | responsibility. |
| 09:32:29 | 24 | THE COURT: All right. Look, I'm satisfied |
| 09:32:32 | 25 | that -- I don't believe there's a viable federal claim at |

present. Due process doesn't apply to a private actor. Any Title IX allegations are premature because the process is just beginning. You can't have a conjectural case. No one's done anything wrong. In fact, they're required under Title IX to -- this obviously has to comport with it, but it's hardly started.

So I'm denying the motion for TRO, and I'm dismissing the federal claims.

Now, there are some state claims. I'll send those to -- was this removed or was it originally filed here?

MR. WALLACE: It was removed, Your Honor. Dave Wallace. Sorry.

THE COURT: I'll remand the state claims to state court.

You know, I'll also indicate I'm satisfied that the procedure that Oberlin has outlined seems fair to me. Again, Oberlin can't compel anyone to appear. They can request it and they can direct both the complainant and the plaintiff here, Mr. Doe, to appear and answer questions. If they refuse, they can't be compelled. Adverse inferences can be drawn. If they've given statements, they can -- statements can be considered, but obviously they're not worth nearly as much because the person didn't appear. If one person appears and the other person doesn't, well, inferences can be drawn there too.

```
09:34:20   1            But in any event, the federal claims, one, it doesn't
09:34:26   2    apply as Oberlin's a private actor, and, second, it's
09:34:30   3    premature, so that one -- I guess that's not binding at all,
09:34:36   4    it's premature.
09:34:38   5                 MR. MURRAY:  Your Honor --
09:34:39   6                 THE COURT:  If they want to proceed in state
09:34:41   7    court, then -- in front of a state judge, he or she can
09:34:44   8    decide what to do with them.
09:34:48   9                 MR. MURRAY:  Your Honor, this is Brian Murray
09:34:49  10    on behalf of the plaintiff again.
09:34:50  11                 THE COURT:  Yes.
09:34:51  12                 MR. MURRAY:  As to the Title IX claim, part of
09:34:56  13    the erroneous outcome was that the university switched after
09:35:01  14    they had agreed to the informal resolution, as was agreed to
09:35:07  15    by all the parties, to the formal resolution.  It wasn't
09:35:11  16    just based upon an erroneous outcome after --
09:35:13  17                 THE COURT:  I don't recognize it as a --
          18                 [Reporter interjection.]
09:35:26  19                 THE COURT:  -- a viable claim.  If you want to
09:35:27  20    raise that later at the end of the -- you know, if there's
09:35:31  21    some adverse finding against your client, you can raise
09:35:34  22    that, that that's a violation of Title IX.  But the Title
09:35:39  23    IX, you've got to wait until it plays out.  I'm just denying
09:35:46  24    the Title IX claims without prejudice.  They're premature.
09:35:55  25           Anything else anyone wanted to say?
```

```
09:36:01   1              MR. WALLACE:  Yes, Your Honor.  This is Dave
09:36:02   2   Wallace again.  And this may not be a popular point to make,
09:36:06   3   but I should point out that they have filed an amended
09:36:11   4   complaint, the amended complaint leave to file that was
09:36:16   5   granted this morning.  In the amended complaint they plead I
09:36:21   6   believe diversity jurisdiction, which would -- and again, I
09:36:25   7   recognize this may not be a popular point to make -- which
09:36:30   8   would mean the state law claims I don't think could be
09:36:34   9   remanded.  Sorry.
09:36:38  10              THE COURT:  Well, I'll deny them without
09:36:40  11   prejudice.  They are premature.
09:36:41  12         What are the state claims?
09:36:46  13              MR. MURRAY:  Your Honor, this is Brian Murray.
09:36:48  14       The state law claims, there's a breach of contract
09:36:51  15   claim, there's a promissory estoppel claim that relate back
09:36:59  16   to the decision by the university in February to switch --
09:37:08  17   we believe there's a contract entered into as it relates to
09:37:10  18   the decision to go through the informal resolution process,
09:37:14  19   and that was a contract and that they breached that contract
09:37:18  20   by then changing course and taking it to a formal process
09:37:23  21   after all the parties had agreed to the informal resolution.
09:37:28  22         There are a state law negligence claim based upon how
09:37:32  23   they handled their investigation, the loss --
09:37:35  24              THE COURT:  I find all of these premature.
09:37:37  25   I'm going to let this play out.  Whatever happens, happens.
```

```
09:37:41   1    It may all be moot.  Title IX directs the university to
09:37:48   2    conduct this investigation, so I'm just denying all those
09:37:51   3    state claims, and the specific case is premature.  I'll let
09:37:57   4    it play out how it plays out.  If someone feels aggrieved at
09:38:01   5    the end, obviously Mr. Doe can pursue whatever claims he
09:38:06   6    has.
09:38:07   7         I'm not going to jump into the middle of a mandated
09:38:11   8    Title IX investigation to deal with the state claims.
09:38:23   9    Because technically there is diversity jurisdiction, so I
09:38:26  10    think that's right, Mr. Wallace, so that's how I'm dealing
09:38:34  11    with these.
09:38:34  12         Okay.  Anything else anyone wants to say?
09:38:38  13         Okay.  I appreciate everyone's appearance this
09:38:40  14    morning.
09:38:42  15              (Proceedings adjourned at 9:38 a.m.)
          16                          * * * * *
          17                       C E R T I F I C A T E
          18
          19         I certify that the foregoing is a correct transcript
          20    of the record of proceedings in the above-entitled matter
          21    prepared from my stenotype notes.
          22
          23              /s/ Lance A. Boardman               05-26-2020
                          Lance A. Boardman, RDR, CRR             DATE
          24
          25
```